<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

October 5, 2020

Lisa Evans Lewis, Esq.
Office of the Federal Public Defender
800-840 Cooper St., Suite 350
Camden, NJ 08053
*Counsel for Defendant*

John Gay, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

## <u>LETTER OPINION FILED WITH THE CLERK OF THE COURT</u>

**Re:** *United States v. Jimenez et al.*
**Criminal Action No. 15-87 (SDW)**

Counsel:

Before this Court are Defendant Guillermo Jimenez's ("Defendant") Motions for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (D.E 87, 89.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motions.

## <u>DISCUSSION</u>

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see United States v. Epstein*, No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020); *Dillon v. United States*, 560 U.S. 817, 825 (2010), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *Epstein*, 2020 WL 1808616, at *2. At this second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).

B.

On February 19, 2016, Defendant pled guilty to one count of conspiracy to possess and distribute a controlled substance in violation of 21 U.S.C. § 846. (D.E. 38, 40.) On March 8, 2019, this Court sentenced Defendant to 48 months of imprisonment and three years of supervised release. (D.E. 82.) Defendant is currently serving his sentence at the Federal Detention Center, Miami ("FDC Miami") in Florida. (D.E. 89-1 at 2.)

Defendant filed an administrative relief request seeking compassionate release with the warden at FDC Miami on May 15, 2020. (D.E. 87 at 38–39.) Defendant requested, in the alternative, that he be transferred to home confinement. (*Id.*) The requests were denied on May 27, 2020, in part on the basis that Defendant did not "suffer from chronic or serious medical conditions related to the aging process." (*Id.* at 41.) On June 9, 2020, having met the procedural prerequisites for judicial review, Defendant appeared *pro se* and moved this Court for compassionate release under the FSA. (D.E. 87.) Following the appointment of counsel, Defendant filed a supplemental motion on August 6, 2020, requesting compassionate release due to the "exponential spread of the COVID-19 virus at FDC Miami" and Defendant's "pre-existing medical conditions which place him [at] an 'increased risk' of severe illness and/or death if he contracts the virus." (D.E. 89-1 at 1.) The Government opposed on September 15, 2020, ("Govt. Opp."), and Defendant filed a reply on September 16, 2020, (D.E. 91).

---

[1] The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1(A).

C.

Defendant contends that his obesity, hypertension, sleep apnea, and rhinitis make him more vulnerable to becoming seriously ill should he contract COVID-19. (D.E. 89-1 at 4.) According to the Centers for Disease Control and Prevention (CDC), people with obesity are at an increased risk of severe illness from COVID-19 and people with hypertension might be at an increased risk of severe illness from COVID-19. *See* CDC, *People with Certain Medical Conditions* (last updated Sept. 11, 2020), *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html*. People with sleep apnea or rhinitis are not in either category. *Id.* Under these guidelines, obesity is defined as a body mass index (BMI) of 30 or higher. *Id.*

This Court is sympathetic to Defendant's medical concerns regarding possible complications caused by COVID-19, but it will not grant his application because he has not established that "compelling and extraordinary reasons" justify his release. *See Epstein*, 2020 WL 1808616, at *2. Defendant's BMI is 32.5; thus, he is obese but not severely so. (Govt. Opp. at 19); *see* CDC, *Defining Adult Obesity* (last reviewed Sept. 17, 2020), https://www.cdc.gov/obesity/adult/defining.html (defining "severe" obesity as a BMI of 40 or higher). Furthermore, Defendant's hypertension and other conditions are being treated with medication and a C-PAP machine as needed. (Govt. Opp. at 19.)

Multiple courts in this District have denied compassionate release to inmates suffering from obesity and/or hypertension, despite the risk of COVID-19. *See, e.g.*, *United States v. Gore*, Crim. No. 10-250, 2020 WL 3962269, at *3–5 (D.N.J. July 13, 2020) (finding that defendant's obesity, asthma, and other factors did not constitute "extraordinary and compelling reasons that would justify his compassionate release," where the facility was providing adequate care); *United States v. Wax*, Crim. No. 14-251, 2020 WL 3468219, at *3 (D.N.J. June 25, 2020) (denying defendant's motion for compassionate release for lack of an extraordinary and compelling reason, even though he suffered from hypertension and obesity, with a BMI of 36, because he was receiving "regular and consistent medical care"); *United States v. Falci*, Crim. No. 17-228, 2020 WL 3410914, at *1, *4 (D.N.J. June 22, 2020) (denying motion for compassionate release where defendant was 60 years old and suffered from obesity, hypertension, and other health issues); *United States v. Bleicher*, Crim. No. 19-99, 2020 WL 2744606, at *3 (D.N.J. May 27, 2020) (denying compassionate release for a defendant with a BMI of 37.7); *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *4 (D.N.J. May 15, 2020) (denying compassionate release where defendant suffered from hypertension and obesity but medical records showed that Bureau of Prisons was "adequately managing [his] medical care").[2]

---

[2] This Court also takes into consideration that two inmates at FDC Miami have died from COVID-19. (Govt. Opp. at 1–2.) With a total population of 1064, FDC Miami's mortality rate is approximately 0.18%, which is about the same rate as New Jersey's. (*Id.*) Having reviewed the safety protocols and procedures instituted by the Bureau of Prisons, (*id.* at 6–8), this Court finds that Defendant's risk of serious illness or death is not substantially higher simply because he is in custody at FDC Miami.

Even if this Court were to find that Defendant's health conditions constituted an extraordinary and compelling reason for release, it would still deny his motions because the applicable sentencing factors under 18 U.S.C. § 3553(a) weigh against his early release. *See Sparrow*, 2020 WL 4364328, at *3 (concluding that, while obesity constituted an "extraordinary and compelling" reason for release, the sentencing factors weighed against compassionate release). Defendant's current 48-month sentence is substantially below the Sentencing Guidelines range of 70 to 87 months imprisonment for his offense. (Govt. Opp. at 23–24.) If this Court releases Defendant now, he will have served approximately 26 months in prison for conspiracy to distribute more than 15 but less than 50 kilograms of cocaine. (*Id.*) Such a sentence would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment for the offense." *See* 18 U.S.C. §§ 3553(a)(2)(A). It would also create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing").

## **CONCLUSION**

For the foregoing reasons, Defendant's Motions for Compassionate Release are **DENIED**.[3] An appropriate order follows.

                                                        ___/s/ Susan D. Wigenton_____
                                                        **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties

---

[3] Defendant requests, in the alternative, that he be designated to serve the remainder of his sentence under home confinement. (D.E. 89-1 at 17.) Although this Court does not have the authority to order such relief, it does have the authority to issue a recommendation to the Bureau of Prisons (BOP). *See* 18 U.S.C. § 3621(b)(4) (stating that the BOP may consider "any statement" by the sentencing court "recommending a type of penal or correctional facility"); *United States v. Ceballos*, 671 F.3d 852, 856 n.2 (9th Cir. 2011) (noting that "district courts [have] the authority to make (or not make) non-binding recommendations to the Bureau of Prisons at any time"). However, this Court declines to issue a recommendation at this time because the BOP is better positioned to evaluate whether Defendant's health conditions justify placement in home confinement.